# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 11, 2014

Plaintiff-Appellee,

v

No. 316046
Washtenaw Circuit Court
LC No. 09-001985-FH

DEANDRE LAMONT SOLOMON,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and STEPHENS, JJ.

PER CURIAM.

Defendant was convicted by a jury of third-degree criminal sexual conduct (CSC-III), MCL 750.520d. He was sentenced to 30 to 180 months' imprisonment. We affirm.

Defendant argues that he was denied a fair trial when the trial court gave a supplemental jury instruction regarding unanimity. We review preserved claims of instructional error de novo by examining the instructions as a whole to determine whether they "adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006).

Defendant was charged with CSC-III for engaging in a single act of sexual penetration with the victim under one or both of two separate circumstances. See MCL 750.520d(1)(a) (victim at least 13 years of age but under 16 years of age) and (1)(b) (force or coercion is used to accomplish the sexual penetration). Before it was sent to deliberate, the trial court properly instructed the jury regarding the elements of the offense and also instructed it that its verdict had to be unanimous. When the jury indicated during deliberations that it was "hopelessly deadlocked," the trial court gave the following supplemental instruction:

> You do not need to be unanimous on either of the alternate theories; complainant's age or force or coercion because they are merely different ways the offense can be proven. So long as each juror believes that at least one theory has been satisfied.

Approximately 20 minutes later, the jury reached a verdict finding defendant guilty of CSC-III on the basis that the victim was between 13 and 16 years of age.

Defendant claims that this supplemental instruction was a misstatement of the law, impermissibly confused the jury, and coerced the jury into reaching a guilty verdict. We disagree. Michigan provides criminal defendants the right to a unanimous jury verdict. Const 1963, art 1, § 14; MCR 6.410(B). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994). As noted above, a person commits CSC-III when he engages in sexual penetration with the victim under one or more circumstances. "When a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *People v Johnson*, 187 Mich App 621, 629-630; 468 NW2d 307 (1991). Accordingly, defendant could have been properly convicted of CSC-III even if some jurors believed that he engaged in sexual penetration with the victim while she was between the ages of 13 and 16, while others believed that he engaged in sexual penetration with the victim through force or coercion. See *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998). The supplemental instruction was thus a proper statement of law that very clearly presented the jury with information regarding its obligations. Moreover, because defendant could have been convicted absent complete unanimity with respect to the alternative theories, the jury's verdict did not constitute an impermissible compromise verdict. See *People v Smielewski*, 235 Mich App 196, 202; 596 NW2d 636 (1999).

Defendant next argues that he was denied his right to due process by an approximately 18-month pre-arrest delay, and that his trial counsel was ineffective for failing to move for dismissal on this ground. We review this unpreserved claim for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"A challenge to prearrest delay implicates constitutional due process rights. . . ." *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999). However, the mere delay between the time of the commission of the offense and arrest does not give rise to a due process violation absent a showing of "actual and substantial prejudice" and an intent by the prosecution to gain a tactical advantage. *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009) (citation omitted). "Substantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected." *Id.* (citation omitted). Defendant has presented no evidence that the prosecution tried to gain a tactical advantage by the delay. Moreover, he has presented no evidence that the delay "meaningfully impair[ed]" his defense. *Id.* There was thus no plain error and defendant's lawyer cannot be faulted for failing to move for dismissal on this ground. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011) (defense counsel not ineffective for failing to advance a meritless position or make a futile motion).

Defendant also argues that he was denied his constitutional right to a speedy trial and that his trial counsel was ineffective for failing to move for dismissal on this ground. We review this unpreserved claim for plain error affecting substantial rights. *Carines*, 450 Mich at 763-764.

"The United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Patton*, 285 Mich App at 235 n 4, citing US Const Am VI and Const 1965, art 1, § 20. See also MCR 6.004; MCL 768.1. In determining whether a defendant has been denied the right to a speedy trial, this Court looks to four factors, including

(1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant from the delay. *Cain*, 238 Mich App at 111, citing *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). Prejudice is presumed if the delay is over 18 months; to the contrary, if the delay is less than 18 months, the defendant must demonstrate prejudice. *Cain*, 238 Mich App at 112. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Patton*, 285 Mich App at 236 (internal quotations and citation omitted).

As to the first factor, length of the delay, the record does not clearly indicate when defendant was formally arrested, but he was arraigned on December 14, 2010. Thus, the delay between defendant's arrest and his February 25, 2013 trial was no less than 24 months. Defendant was therefore presumptively prejudiced, and we must consider the other *Barker* factors to determine if he was deprived of the right to a speedy trial. *People v Williams*, 475 Mich 245, 262; 716 NW2d 208 (2006).

The second factor, reasons for the delay, weighs against defendant. A review of the record reveals that approximately three months of the delay—from March 1, 2011 to May 17, 2011—was attributable to the time it took to adjudicate defendant's initial requests for a competency examination and an evaluation of his criminal responsibility. The time needed to adjudicate defense motions is charged to the defendant. *People v Gilmore*, 222 Mich App 442, 461; 564 NW2d 158 (1997). An additional three months—from August 8, 2011 to November 14, 2011—was attributable to defendant's arrest for an unrelated CSC crime and subsequent failure to appear for a pretrial conference, thus necessitating a rescheduling of that conference. Additional delay was attributable to the fact that, on February 6, 2012—the date originally set for trial—defendant indicated, to the surprise of the prosecution and even his own attorney, that he wished to reject a plea offer and proceed to trial. Another two months—from April 13, 2012 to June 14, 2012—was attributable to the time it took to adjudicate defendant's second request for a competency examination. Finally, further delay was attributable to defendant's stipulations to adjourn pretrial conferences (one of which was at his request) and the time it took to secure new counsel after his first two attorneys withdrew. In sum, defendant was responsible for substantially more of the delay than the prosecution. While some of the delay could have been attributable to trial court congestion, such delays "are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009).

The third factor, whether defendant asserted his right to a speedy trial, weighs against defendant because he never formally asserted his right to a speedy trial. Although there was some informal discussion at the November 14, 2011 pretrial conference regarding defendant's wish for an "immediate" trial, that request came almost one year after he was arrested. A defendant's failure to promptly assert his right to a speedy trial weighs against a subsequent claim that this right was violated. *People v Rosengren*, 159 Mich App 492, 508; 407 NW2d 391 (1987).

Finally, with respect to prejudice, defendant "does not offer much of an explanation regarding how he was prejudiced by the delay." *Waclawski*, 286 Mich App at 668. There are two types of prejudice which can result from unreasonable delay: prejudice to the defendant personally, such as where he is incarcerated pending trial, and prejudice to his defense, such as

where the delay leads to the inability to find witnesses or a fading of witnesses' memories. *Id*.; *Gilmore*, 222 Mich App at 461-462. Here, while defendant was incarcerated pending trial, it was not for the charged offense, but rather for an unrelated CSC offense, to which he pleaded guilty and was sentenced to prison. Moreover, defendant makes "no claim that because of the delay he was somehow unable to defend himself." *Waclawski*, 286 Mich App at 669. Accordingly, defendant was not denied his right to a speedy trial and his trial lawyer was not ineffective for failing to make a futile motion to dismiss on that basis. *Fonville*, 291 Mich App at 384.

Defendant next argues that he was entitled to 575 days of jail credit for time served while he was awaiting trial in this case. We disagree. "The question whether [a] defendant is entitled to sentence credit pursuant to MCL 769.11b for time served in jail before sentencing is an issue of law that we review de novo." *Waclawski*, 286 Mich App at 688 (citation omitted).

The record in this case indicates that defendant was released on bond on December 14, 2010. However, sometime in either late July or early August 2011, he was arrested for the unrelated CSC-III offense in Wayne County. Defendant pleaded guilty to that offense and was sentenced to 18 months' imprisonment in September 2011. MCL 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

As the statute plainly states, a defendant is only entitled to sentence credit for time served as a result of being denied or unable to furnish bond "for the offense of which he is convicted." See *Waclawski*, 286 Mich App at 688. Here, however, it is clear that the time defendant served in jail/prison before sentencing in this case had nothing to do with this offense, but rather was for an unrelated offense. Thus, he was not entitled to credit for that time under MCL 769.11b.

Defendant nevertheless contends that he was entitled to credit for time served under due process principles because of the improper delay between his arrest and trial, and further that the trial court had discretion to grant him such credit. As to the first contention, we disagree that principles of due process compelled a grant of jail credit: as discussed above, defendant was not denied his right to a speedy trial. Moreover, while it is true that a sentencing court has discretion to award jail credit not otherwise available to a defendant, *People v Adkins*, 433 Mich 732, 751 n 10; 449 NW2d 400 (1989), it is clear that the trial court properly exercised that discretion in this case by declining to grant the request.

Defendant next argues that he was denied a fair trial by the prosecution's comments during closing argument, and that his trial counsel was ineffective for failing to object to these instances of misconduct. We review these unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Carines*, 450 Mich at 763-764. In order to show that prosecutorial error warrants relief, defendant must demonstrate that the prosecution's comments denied him a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). Issues of prosecutorial misconduct are decided on a case by case basis by examining the entire record and evaluating the remarks in context. *People v Callon*, 256 Mich App 312, 330;

662 NW2d 501 (2003). Error requiring reversal cannot be found if a curative instruction "could have alleviated any prejudicial effect" resulting from the remarks. *Id*. at 329-330.

Defendant contends that the prosecution mischaracterized the evidence by asserting during closing argument that there was no DNA or other physical evidence of the sexual assault because of the delay in reporting. We agree. In actuality, the testimony from trial indicated that the victim's bed sheets were collected after she reported that defendant ejaculated onto them. The investigating officer testified that he stored the bed sheets in the property room of the Washtenaw County Sheriff's Department, and had no explanation for why they were not tested for DNA. Nonetheless, we conclude that defendant is not entitled to relief on this error. A timely objection and curative instruction could have alleviated any possible prejudice resulting from the prosecutor's erroneous remark. *Callon*, 256 Mich App at 329-330. Moreover, defendant's trial counsel in fact alleviated any prejudice when he responded to the remark in his own closing argument. In any event, the trial court properly instructed the jury that the attorneys' statements were not evidence and that the jury should only accept things that the lawyers say that are supported by the evidence or by its own common sense and general knowledge. These instructions "dispelled any prejudice arising from the prosecutor's comment." *Id*. at 331. Absent a showing of prejudice, defendant was not deprived of a fair trial or the effective assistance of counsel. *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994).

Defendant also contends that the prosecutor improperly bolstered the testimony of its witnesses by vouching for their credibility. We disagree. A prosecutor may comment on the credibility of her own witnesses and argue that the witnesses should be believed. *People v Bahoda*, 448 Mich 261, 279; 531 NW2d 659 (1995). Here, a review of the record demonstrates that the prosecutor's comments were made in support of the victim's and her mother's credibility after defense counsel had earlier attacked that credibility during his opening statement, during cross-examination, and during his closing argument. The prosecutor did not base her comments on some specialized knowledge of the witnesses' truthfulness, but rather on the specificity of their testimony, their demeanor on the witness stand, and their lack of motive to lie. There was no plain error with respect to these comments, and defendant's trial counsel cannot be faulted for failing to raise a meritless objection. *Fonville*, 291 Mich App at 384.

Defendant next argues that he was denied his right to a fair and impartial jury when a former attorney was allowed to sit on the jury panel. According to defendant, this error was compounded because, in light of his previous conviction for an unrelated CSC offense, defendant was accompanied throughout trial by two MDOC corrections officers, and a retired attorney would have "easily surmise[d]" that he was a convicted felon by the presence of the corrections officers. He further asserts that his trial counsel was ineffective for failing to challenge the juror. We review this unpreserved claim for plain error affecting substantial rights. *Carines*, 450 Mich at 763-764.

During voir dire, a potential juror indicated that he was a retired attorney. He elaborated that he was formerly in the JAG Corps of the United States Army, where he had exposure to "a couple" criminal sexual conduct cases, before spending the remainder of his professional career as a medical malpractice defense attorney. Upon questioning from the trial court, the juror expressed that his previous experience would not prevent him from rending a fair and impartial

verdict, that he could keep an open mind, and that he had no religious or philosophical beliefs that would prevent him from being a juror.

A criminal defendant has a state and federal constitutional right to be tried by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20. See *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). To that end, our Court Rules provide several grounds that would justify challenging a juror for cause. In relevant part, MCR 2.511(D) provides that "[i]t is grounds for a challenge for cause that the person . . . (2) is biased for or against a party or attorney; (3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be; [or] (4) has opinions or conscientious scruples that would improperly influence the person's verdict . . . ." Jurors are presumed to be fair and impartial until the contrary is shown. *Miller*, 482 Mich at 550 (citation omitted). "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id*.

Defendant has failed to meet his burden of demonstrating that the juror was not impartial. First, the juror's status as a retired attorney is not sufficient to rebut the presumption of impartiality. See *id*. at 553. Second, defendant's argument that the juror could have "easily surmise[ed]" his status as a convicted felon is mere speculation. Regardless, the juror affirmatively represented that his experience would not prevent him from rendering a fair and impartial verdict, and that he could keep an open mind. There was no plain error.

Moreover, defendant's trial counsel was not ineffective for failing to use a preemptory challenge to remove the juror. As this Court has previously noted, we have been historically "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror" because it is the attorney, not this Court, who is present to observe "a potential juror's facial expressions, body language, and manner of answering questions." *People v Unger (On Remand)*, 278 Mich App 210, 258; 749 NW2d 272 (2008). "A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury." *Id*. (internal quotations and citation omitted). In this case, defendant's trial counsel was present during voir dire to observe the body expressions, mannerisms, and answers of the juror in question. We will not second-guess trial counsel's determination that he had obtained a fair and impartial jury.

Defendant next argues that he was denied a fair trial by the trial court's decision to shackle him during trial, and that his defense counsel was ineffective for failing to object to the shackling. Although we agree that the shackling was unwarranted, and consequently that defendant's attorney was ineffective for failing to object to that unjustified shackling, we conclude that defendant has failed to demonstrate any prejudice.

Generally, this Court reviews a trial court's decision to shackle a defendant for an abuse of discretion under the totality of the circumstances. *People v Dixon*, 217 Mich App 400, 404-405; 552 NW2d 663 (1996). Here, however, defendant failed to preserve the issue. This Court reviews unpreserved issues, whether constitutional or nonconstitutional, under the plain error standard. *Carines*, 460 Mich at 764.

"The Sixth Amendment guarantee of the right to a fair trial means that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence

introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' " *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002), quoting *Taylor v Kentucky*, 436 US 478, 485; 98 S Ct 1930; 56 L Ed 2d 468 (1978). Freedom from shackling has long been recognized as an important component of a fair trial "because having a defendant appear before a jury handcuffed or shackled negatively affects the defendant's constitutionally guaranteed presumption of innocence . . ." *Banks*, 249 Mich App at 256. See also *Dixon*, 217 Mich App at 404. "Consequently, the shackling of a defendant during trial is permitted only in extraordinary circumstances." *Id*. at 404. Specifically, shackling is permitted only upon a finding, supported by record evidence, that it is necessary to prevent the escape of the defendant, to prevent the defendant from injuring others in the courtroom, or to maintain an orderly trial. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009); *Dixon*, 217 Mich App at 404.

At the outset, the trial court plainly erred in shackling defendant at the legs during these proceedings. As noted above, a trial court may *only* order a defendant to wear restraints for particularized reasons, which must be supported by record evidence. *Payne*, 285 Mich App at 186; *Dixon*, 217 Mich App at 404. We previously granted defendant's motion for remand on this issue. *People v Soloman*,[1] unpublished order of the Court of Appeals, entered February 26, 2014 (Docket No. 316046). At the evidentiary hearing, the trial court justified its decision to shackle defendant by using mere generalities; i.e., that defendant was already incarcerated for a CSC offense, that he was facing charges on another CSC offense, that the courtroom in which the trial was held was easily escapable and lacked sufficient security measures, and that disturbances sometimes occurred in the courtroom. Absent some record evidence that defendant himself posed a threat to security, that he was in fact a flight risk, or that he would in fact disrupt trial if not shackled, the trial court's belated justifications were simply not sufficient under our jurisprudence. Consequently, defense counsel's failure to object constituted a deficient, objectively unreasonable performance. See *Pickens*, 446 Mich at 303.

Notwithstanding the above conclusions, we conclude that defendant has failed to demonstrate prejudice. "A defendant is not prejudiced if the jury was unable to see the shackles on defendant." *Payne*, 285 Mich App at 186, quoting *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). At the evidentiary hearing, the trial court indicated that it had reviewed the video recordings of defendant's trial and had found no instance in which defendant's leg restraints were visible to the jury; defendant wore pants that could have covered the restraints, was seated at a table that had privacy panels on both sides and the front, and never walked anywhere in the jury's presence. Moreover, each time the jury entered the courtroom, its view of defendant was obstructed by a podium, the prosecution table, the officer in charge and the prosecuting attorney sitting at that table, and defendant's own attorney. Defendant appeared to keep his legs well under the table at all times, and his arms were never restrained. Although

---

[1] It appears there was a clerical error with regard to the spelling of defendant's last name.

defendant had indicated in his motion to remand that he believed at least four jurors could see his leg restraints during trial, no such evidence was presented at the evidentiary hearing.[2]

In reaching the above conclusion, we acknowledge the affidavit of defendant's appellate attorney, included with defendant's second motion for remand,[3] which averred that appellate counsel sent "inquiries" through the mail to the jurors after the evidentiary hearing and received a response from one juror affirming that he saw defendant's shackles. However, while the affidavit was required to be filed with defendant's motion for remand, MCR 7.211(C)(1), it is not evidence. In any event, the affidavit does not indicate that the juror was at all influenced by what he or she allegedly saw. A defendant does not automatically establish prejudice upon a finding that the jury inadvertently saw his shackles. *Horn*, 279 Mich at 37 (citation omitted). Thus, even if we were to consider the affidavit, it fails to establish that defendant was prejudiced. Accordingly, defendant was not deprived of a fair trial. Moreover, because he suffered no prejudice, defendant was not denied the effective assistance of counsel. See *Pickens*, 446 Mich at 314.

Defendant finally argues that the trial court erred in scoring five points under offense variable (OV) 3 of the legislative sentencing guidelines. Under the sentencing guidelines, we review a trial court's factual determinations for clear error to determine whether they are supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation" that we review de novo. *Id*.

OV 3 scores points for the degree of physical injury to a victim and provides that five points may be assessed where "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(3). " '[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). The trial court determined that five points were appropriate because the victim testified that defendant forced her into having sexual intercourse by grabbing onto her arms and punching her in the stomach before pinning her down on the bed. It was reasonable for the trial court to infer from this testimony that the victim suffered a bodily injury, even if such injury was minimal. Therefore, there was sufficient evidence to support a score of five points under OV 3.

---

[2] We note that the day before the evidentiary hearing, the trial court denied defendant's request to adjourn that hearing so he could have additional time to subpoena the jurors who potentially saw defendant's leg restraints. Defendant does not challenge that decision, and we note that the trial court was within its discretion to deny the motion. At the time the motion was heard, the trial court was days away from the 56-day deadline within which to hold the evidentiary hearing, as instructed in our remand order. Moreover, at the time the motion was heard, defendant had provided the trial court with absolutely no evidence to suggest that any of the jurors saw defendant's leg restraints.

[3] Defendant's second motion for remand was denied.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens